John- E. Heilman, J.
This is a proceeding commenced by-petition dated March 3, 1970, pursuant to article 5 of the Family Court Act, in which the petitioner alleges that the respondent is the father of a child born to her out of wedlock on March 22,1965. By notice dated 'September 28,1970 respondent demanded a bill of particulars of the allegations of the petition. Simultaneously with this demand, respondent served petitioner with a notice to take petitioner’s deposition upon oral examination. The petitioner did supply the bill of particulars, but through counsel, advised respondent by letter dated October 2, 1970 that she would not-submit to oral examination. However, petitioner sought no protective order pursuant to CPLE 3103 (subd. [a]). Upon petitioner’s failure to attend the scheduled examination before trial, respondent moved for an order directing her to appear for such examination pursuant to CPLE 3124. Counsel for the respective parties were heard on this motion on the 17th day of November, 1970 and the court reserved decision.
Among the issues raised was the effect of the Statute of Limitations in this proceeding. Section 517 of the Family Court Act provides:
“ (a) Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity *590 has been acknowledged by the father in writing or by furnishing support.
“ (b) If the petitioner is a public welfare official, the proceeding' may be originated not more than ten years after the birth of the child.” The petition in the instant case, while it was filed long after the two-year period of limitation, alleges that the respondent acknowledged paternity by furnishing support.
If the petitioner here fails to meet her burden with respect to her allegation concerning support by respondent, her petition would be subject to dismissal. (Howard v. Robinson, 32 A D 2d 837.)
The constitutionality of section 517 was challenged in Matter of Wales v. Gallon (61 Misc 2d 681), that court declaring that the dual Statute of Limitations of 2 and 10 years violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. If this court were to follow the holding in Wales (supra), the petitioner would not have to prove support by respondent in order to overcome the provisions of section 517.
Without attacking the merits of the Wales decision, counsel for the respondent urged that this court should not adhere to that holding, in light of the fact that the Attorney-General of this State was not joined as a party. While section 71 of the Executive Law does prescribe the procedure for notifying and joining the Attorney-General when the constitutionality of a statute is questioned, this procedure is a discretionary one with the court, and it does not appear that the failure of the Attorney-General to be notified or to appear in any way affects the validity of the court’s decision on the constitutional issue. Nevertheless this court is not inclined to consider Wales as controlling or convincing in the case at bar. The court’s research disclosed no appellate ruling in which the constitutionality of section 517 has been raised or ruled upon. Furthermore, it does not appear that Wales itself will be subject to appellate review. This court is not bound by the ruling in Wales. The two-year Statute of Limitations was very strictly construed and reaffirmed in Matter of Howard v. Robinson (supm). There an attempt was made by the petitioner mother to utilize CPLR 208 (dealing with Statutes of Limitation as to infants) to extend the time within which she might commence her proceeding. This court will therefore continue to be controlled by the provisions of section 517 of the Family Court Act until such time as the Legislature or an appropriate appellate *591 court otherwise decides. The petitioner in this case will be required to produce evidence at the hearing as to support by the respondent to meet the provisions of section 517.
The second and primary issue which this court must decide is that concerning respondent’s right to an examination before trial of petitioner. As respondent quite properly points out, paternity proceedings are considered civil in nature and as such are governed by the applicable sections of the CPLR, absent specific Family Court Act provisions therefor. (Matter of Harris v. Doley, 22 A D 2d 769.) However, this is not to say that the CPLR is to be applied in paternity cases without limitation or qualification. Indeed, section 165 of the Family Court Act clearly indicates that the provisions of the CPLR ‘ ‘ apply to the extent they are appropriate to the proceedings involved.” In determining the appropriateness of the relief sought by respondent, it has been held that where, as is the case here, petitioner has supplied a bill of particulars, the respondent must show some special circumstances before an examination before trial will be granted. (Matter of Tilson v. Bark, 52 Misc 2d 338; see, generally, Schatkin, Disputed Paternity Proceedings [4th ed.], pp. 528-535 and cases cited.) The court in Tilson stated (p. 340) of its decision that: “ Historically, an examination before trial appears to have no precedent in a filiation proceeding (see Matter of “Doe” v. “Roe”, 40 Misc 2d 148, 149). Indeed, the accumulation of experience in this court argues strongly against it. Long before the CPLR it was said: 1 These special proceedings are governed by their own rules, separate and distinct from those generally applicable to civil and criminal actions ’ (Duerr v. Wittmann, 5 A D 2d 326, 330). It is doubtful whether the advent of the CPLR was intended to accomplish a change of practice and procedure in the pretrial stage of this kind of case. In the circumstances of Matter of “Doe” v. “Roe” (supra), the court denied an examination of the petitioner under the Civil Practice Act * * * while recognizing (p. 151) 1 that in some filiation proceedings a particular issue or some special circumstances arise which may justify an examination of a party before trial upon that issue. ’ ”
The only special circumstances to which respondent alluded in his argument were that petitioner’s bill of particulars was inadequate and the case itself was stale. With regard to the first of these items, respondent at all times had available to him a remedy if in his opinion the bill of particulars supplied him was in any way inadequate (CPLR 3042, subd. [d]). *592 There is no indication that respondent ever sought to avail himself of the provisions of that statute and he must therefore be deemed to have waived whatever defects there might have been. This court does not consider this a special circumstance • justifying an examination before trial.
With regard to the second of respondent’s arguments, that of staleness, it is true that delay in commencing a proceeding such as this is considered by some to be a possible ground for the grant of an examination before trial. (Schatkin, supra, 1970 :Supp., pp. 535-536.) Aside from the bare allegation of staleness, respondent has not specifically demonstrated how the delay has in any way prejudiced his position, nor has he demonstrated in what particular respects an examination before trial would remedy any prejudice which might exist. Again, no special circumstance is demonstrated. This court therefore concludes that the reasons stated by respondent are insufficient to warrant the relief being sought.
The only problem remaining is the effect of petitioner’s failure to seek a protective order pursuant to CPLE 3103 (subd. [a]). Unlike the CPLE provisions dealing with protective orders in opposition to notices which seek discovery and production (CPLE 3120) or physical or mental examination (CPLE 3121), which must be sought within five days from the receipt of such notice (CPLE 3122), CPLE 3103 has no specific limitation of time within which the protective order must be sought. Indeed the court may at any time and on its own initiative make a protective order if the facts and circumstances so warrant. (CPLE 3103, subd. [a].) While petitioner’s failure to move for a protective order at once might be considered somewhat of a discourtesy to the lawyer who noticed the examination, petitioner did immediately advise respondent that she would not be available for the examination, and that she would appear only under compulsion of a court order. Thus respondent was immediately made aware of petitioner’s intentions. Eespondent relies on the case of Matter of Handel v. Handel (26 N Y 2d 853) as supporting his contention that failure of petitioner to seek a protective order precludes the court from now considering her arguments. It should be pointed out that the Court of Appeals decision in Handel dealt only with a procedural issue and is apparently based upon CPLE 3122 which deals with protective orders as the same relate to discovery and inspection under CPLE 3120. The court specifically passed on no other issue. In addition, Handel involved a support proceeding and not a *593 filiation proceeding as is the case here. It is interesting to note that the Court of Appeals holding in that case clearly indicated that both the trial court and the Appellate Division had discretion to excuse strict compliance with the provisions of the CPLR as they relate to the issuance of protective orders. Furthermore, CPLR 3103 (subd. [a]) itself contains clear language indicating that the court has broad discretion in controlling the conduct or use of disclosure devices. In fact that section provides that the court on its own initiative may act to prevent improper use of such devices. Bach of the cases cited by the Handel court Zeif v. Zeif (31 A D 2d 625); Coffey v. Orbachs, Inc. (22 A D 2d 317) dealt with protective orders sought pursuant to CPLR 3122 and related to discovery and inspection, not to oral examination, which would be governed by CPLR 3103 (subd. [a]). If the holdings in Zeif and Coffey {supra) were applied to CPLR 3103 (subd. [a]) they would have the practical effect of striking out that portion of CPLR 3103 (subd. [a]) dealing with the court’s discretion to grant relief on its own motion.
This court will not so apply those holdings, and will exercise its discretion and deny respondent’s motion to compel an examination before trial. Such exercise of discretion is based upon the circumstances of the case, the nature of the proceeding, and the body of case law which dictates against a liberal use of pretrial disclosure in paternity proceedings.